## Noel B. Boyden et al.

## v.

## Eli Frank, Assignee, etc.

1. Replevin.—A writ of replevin will not lie except against a party who takes and retains possession; and when an officer has fully executed a previous replevin writ and has no further control of the property in controversy, a suit in replevin can not be maintained against him.

2. Same—Officer—When writ is protection.—Where a replevin writ is executed by replevying the property from the possession of the defendant in the writ, the writ is a complete protection to the officer, irrespective of the real ownership of the property.

3. Voluntary assignment—Exclusive jurisdiction.—In the matter of voluntary assignments under our statute the county court is invested with exclusive jurisdiction to control, administer and distribute the trust estate and to control the assignee in the discharge of his duties.

4. Same—Aid of other courts may be invoked by assignee.—But it does not follow that the jurisdiction of other courts may not be invoked in aid of the administration of the estate by the county court, and the exercise of such ancillary jurisdiction has never been held to be an invasion of the rule upon which the claim of the county court to exclusive jurisdiction must rest.

5. Same—Assignee's suit subject to same defenses as any other. —A replevin suit brought by a general assignee is subject to the same rules as those governing similar suits brought by any other party; and as the law

entitles a defendant in replevin to litigate not merely the right of possession but the right of property, the assignee adopting that form of action must be held to have adopted it with all its incidents.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding. Opinion filed August 6, 1886.

Mr. GEORGE H. KETTELLE, for appellants; that where property which has been fraudulently obtained is turned over to the assignee by the assignor, the assignee, not being a pur_chaser for value, will have no higher right to the property than the assignor himself had, cited Bishop on Insolvent Debtors, 238, § 305; Joslin v. Cowee, 60 Barb. 48; Chaffee v. Fort, 2 Lans. 81; Bliss v. Collte, 32 Barb. 322; Wells on Replevin, 185, § 325; Farley v. Lincoln, 51 N. H. 579; Barrett v. Warren, 3 Hill, 350; Poor v. Woodburn, 25 Vt. 240; Thayer v. Turner, 8 Met. 550.

Messrs. MOSES, NEWMAN & REED, for appellee; that an officer can not justify under a writ of replevin, cited Stimpson v. Reynolds, 14 Barb. 506; State v. Jennings, 14 Ohio St. 733; *contra*, Foster v. Pettibone, 20 Barb. 350; Willard v. Kimball, 10 Allen, 211.

If the officer may justify at all, he should, at least, plead the title of the plaintiff in the replevin writ, as is the privilege of an officer justifying under an attachment suit: Cook v. Miller, 11 Ill. 611; Pease v. Anderson, 44 Ill. 218.

The coroner's plea does not even cover the return of the replevin writ, and this must be pleaded when *mesne* process is shown: Slomer v. People, 25 Ill. 71; Hoe's Case, 5 Coke, 90; Allen v. Woodford, 36 Conn. 143.

As to the jurisdiction of the county court in assignment: Waterbury v. Hanchett, 17 Chicago Legal News, 411.

BAILEY, P. J. This was replevin brought by Eli Frank, assignee of Barnett Graff and Isaac Abrahamson, against Noel B. Boyden and Thomas Wilson. It appears that on the 14th day of February, 1884, said Graff and Abrahamson, copart-

Boyden v. Frank.

ners, doing a mercantile business under the firm name of Graff, Abrahamson & Co., purchased of said Wilson a bill of lace goods, amounting to $1,044, and on the 17th day of the following April another bill amounting to $93.25. On the morning of the 6th day of May, 1884, Graff, Abrahamson & Co. confessed judgments in the Superior Court of Cook county in favor of various creditors, amounting in all to about $50,000, and executions thereon were immediately issued to Seth F. Hanchett, then sheriff of Cook county, who at once levied upon the stock of goods of Graff, Abrahamson & Co., and placed the same in charge of a custodian. On the same day Wilson, claiming that the two bills of goods above mentioned were obtained from him by Graff, Abrahamson & Co., by fraudulent representations as to their financial standing and responsibility, and with a preconceived design on their part not to pay for them, disaffirmed said sale, and to recover possession of said goods, sued out a writ of replevin therefor against said Hanchett directed to said Noel B. Boyden, then coroner of said county, to execute. The coroner thereupon went to the sheriff with his writ and read the same to him and demanded said goods, but the sheriff told him that the deputy who had charge of said levies was absent, and requested him to wait until the next morning for a delivery of the goods.

On the same day Graff, Abrahamson & Co. executed to said Frank a general assignment of their property for the benefit of their creditors, said assignment being filed for record at 2:40 P. M. Late in the afternoon the several creditors whose executions were in the hands of the sheriff, united in the execution of a paper, in which they consented to the surrender of the possession and custody of the goods levied upon by the sheriff to the assignee, such consent, however, being upon the express condition that their respective liens under said executions should attach to said property in the hands of the assignee, with the full force and effect of the liens of the sheriff under said executions. Said stipulation being filed in the county court by the attorneys for said creditors, and no other parties appearing, an order was entered by that court

that the sheriff deliver possession of said stock of goods to the assignee, it being provided in the order that the rights of the sheriff under the executions attach to said goods when surrendered to the assignee, with the same force and effect as if the sheriff had remained in possession thereof. The stock of goods continued in the possession of the sheriff, in charge of his custodian, until the next morning, May 7th, when by agreement between the assignee, the sheriff and an attorney, representing the judgment creditors, the sheriff delivered to the coroner the goods called for by the replevin writ and surrendered to the assignee the possession of the residue. The coroner immediately turned over to Wilson the goods thus replevied by him and took his receipt therefor. In the afternoon of the same day, the assignee commenced the present suit, making the coroner and Wilson defendants, and replevied the goods from Wilson.

The declaration consists of two counts, the first charging the defendants with wrongfully taking and detaining said goods, and the second charging them with wrongfully detaining the same. The defendants pleaded *non cepit*, *non detinet*, property in Wilson, property in Graff and Abrahamson, property in the sheriff and property in John Doe, and defendant Boyden filed a separate plea justifying, as coroner, under the writ of replevin in the suit of Wilson v. Hanchett. No replications seem to have been filed to said pleas, but the parties went to trial without any objection on that ground, and a jury being waived, the court found the issues for the plaintiff and assessed his damages for the detention of the property replevied at one cent. A motion by the defendants for a new trial being overruled, judgment was entered on the verdict.

One of the grounds upon which the motion for a new trial was based was, that under the pleadings and evidence, there should have been no finding against defendant Boyden. This ground we think was well taken, and a new trial should therefore have been granted. The evidence seems to us to be very clear, that, at the time the suit was commenced, the possession of the goods in question was in Wilson and not in Boyden.

Boyden v. Frank.

Boyden testifies that he turned them over to Wilson at about eleven o'clock in the forenoon, and the officer who served the replevin writ in this case, testifies that said writ came into his hands at about three or four o'clock in the afternoon of the same day.   This is corroborated by many facts surrounding the transactions as shown by the evidence.   At the time of the commencement of the present suit, then, the replevin writ in Boyden's hands had been fully executed, and he had no fur_ ther control of the property in controversy.   Under such circumstances, a suit in replevin can not be maintained against him.   In Gaff v. Harding, 48 Ill. 148, a suit in replevin was brought against a sheriff, to recover possession of certain property upon which he had levied an execution, but which he had turned over to the judgment debtor upon a delivery bond, and it was held that, as the sheriff was not in possession, the writ would not lie against him.; that " the writ will not lie except against a party who takes and retains possession."

But there is another reason why the issues should not have been found against defendant Boyden, which in our opinion is equally satisfactory.   His plea justifying under the replevin writ in his hands presented, we think, a good defense, and was sustained by the evidence.   The sufficiency of a justification by an officer under a writ of this character has not, so far as we are aware, been passed upon in this State, and the decisions bearing upon the question in the other States are not altogether harmonious.   The weight of authority, however, would seem to be in favor of sustaining the defense. In Shipman v. Clark, 4 Denio, 446, which was trespass against an officer and others for replevying property belonging to the plaintiff, a stranger to the writ, it was held that the replevin writ was a protection to the officer.   In the opinion, Bronson, J., quoting in substance a *dictum* of Lord Holt in Hallet v. Byrt, Carthew, 380, says: " On an execution against the goods of A, the officer acts at his peril, if he takes the goods of B.   But in replevin, where the command of the writ is to replevy and deliver certain specified chattels, the process may be a sufficient protection to the officer, though he take the chattels from the possession, and they may be the property,

of one who is a stranger to the writ." These authorities were followed in Foster v. Pettibone, 20 Barb. 350. That was trespass against a sheriff for taking a quantity of flour under a replevin writ, issued against a person other than the owner, who at the time had the property in his possession. It was held that the action would not lie, the court saying: " There would be a flagrant inconsistency in holding that an officer of the law may be liable in tort for taking property which by law he is commanded to take, when he kept strictly within the limits of his process, in compelling the commission of a wrong and enforcing a responsibility for it, but I do not see why this doctrine would not be involved in the maintenance of the action. The property taken was specified in the writ; the writ contained a command to take it which was absolute and unqualified ; no direction was given to the sheriff to inquire into the right of property before seizure ; no means are provided by the statute for such inquiry. * * * Viewing the mandate of the writ as imperative and unconditional, the strongest considerations upon which the principle of protection to ministerial officers can rest in any case, exist and require protection to the defendant in this. It would be intolerable to require the sheriff to act, and hold him responsible for his action, to a third person who might prove to be the owner of the property."

In Willard v. Kimball, 10 Allen, 211, a suit in trover was brought against a sheriff for taking a quantity of coal under a writ of replevin, the ownership of the coal being in dispute between the plaintiff in the trover suit and the defendant in the replevin suit. The court refused to consider the evidence of ownership, holding it to be immaterial, as the writ would in either case be a protection to the officer. In Weiner v. Van Rensselaer, 43 N. J. Law, 547, the same principle is clearly recognized, although the proposition there decided is, that while property is in the sheriff's hands by virtue of a writ of replevin, it is in the custody of the law, and can not be taken from him by a second writ of replevin, before he has executed · his writ, but that as soon as he has perfected service of the writ, the property may be replevied

from the person to whom the officer has delivered it. Cases which hold a contrary doctrine, or at least a considerable portion of them, seem to have arisen where the writ was executed by taking the property from the possession of the real owner, and not from that of the defendant in the writ. Such appears to have been the case in Stimpson v. Reynolds, 14 Barb. 506, but that case is directly overruled by Foster v. Pettibone, *supra*. We are disposed to yield our assent to the reasoning of the court in Foster v. Pettibone, to the extent at least of holding that, where a replevin writ is executed by replevying the property from the possession of the defendant in the writ, as in this case, the writ is a complete protection to the officer, irrespective of the real ownership of the property. It follows that the finding of the court, so far as it relates to defendant Boyden, was unwarranted by the evidence.

It appears from the evidence that, in the case of Wilson v. Hanchett, issues as to the title and ownership of the property replevied, were duly formed by declaration, pleas and replications, and that said cause was tried and a verdict rendered, finding the issues in favor of Wilson and finding the property in the goods and chattels replevied in him, and that a judgment was duly rendered by the court on said verdict that said Wilson retain possession of said property, to be held by him, irreplevisable, and recover of said Hanchett his costs. It is by no means clear to us that the judgment in that case, should not be held to be conclusive upon Graff, Abrahamson & Co., and upon their assignee, who stands in the relation of privity to them, but as there are other questions which are decisive of the case upon this appeal, and which necessitate a reversal of the judgment, we are not disposed to express a definite opinion upon that question.

Evidence was offered by the defendants at the trial tending to prove that the goods replevied were obtained from Wilson by Graff, Abrahamson & Co. by fraud, but all evidence on that subject was excluded, the court apparently holding that the question of fraud in obtaining the goods, and of Wilson's right to rescind the sale and repossess himself of the goods,

was within the exclusive cognizance of the county court, and for that reason could not be determined by the superior court in the replevin suit. We are of the opinion that this was an erroneous view of the law, and that the evidence offered should have been admitted.

It can not be questioned that, under our statute in relation to voluntary assignments for the benefit of creditors, the county court is invested with exclusive jurisdiction to control, administer upon and distribute the trust estate, and to control the assignee in the discharge of his duties. Freydendall v. Baldwin, 103 Ill. 325; Hanchett v. Waterbury, 115 Id. 220; Colburn v. Shay, 17 Bradwell, 280; Preston v. Spaulding, 18 Id. 341. This, however, does not result from any express words of the statute conferring the jurisdiction on the county court, and prohibiting the other courts from exercising it, but is only an application of the familiar and long established rule that in cases of concurrent jurisdiction the court which first obtains it will have precedence. By the execution and recording of the assignment, the county court obtains jurisdiction of the estate vested in the assignee by the assignment, and from that time its jurisdiction must have precedence over that of other courts. But it does not follow that the jurisdiction of other courts may not be invoked in aid of the administration of the estate by the county court, and the exercise of such ancillary jurisdiction has never been held to be an invasion of the above mentioned rule, upon which the claim of the county court to exclusive jurisdiction must rest. We had occasion to consider this question somewhat at length in Preston v. Spaulding, *supra*, and we then reached the conclusion that the assignee, in his efforts to get the estate assigned, into his possession, and subject it to the administrative jurisdiction of the county court, was not necessarily confined to suits and proceedings in that court.

The present case is not an unapt illustration. The assignee has seen fit to go into the superior court and commence there a common law action of replevin. His right to do so, and the authority of the superior court to lend him the aid of its process is not questioned. But it is claimed that the

Boyden v. Frank.

court, after having issued its writ at the instance of the assignee and placed him in possession of the goods in controversy, is limited as to the nature and scope of the questions in relation to said property, which it can investigate and determine. In other words, the position seems to be taken, that the superior court had the authority to give the assignee possession of the property, but not to adjudicate upon his rights to it. Upon what principle can the court be said to be thus limited? The assignee having brought his suit, and rightfully as he must concede, the law applicable to that class of actions determines the scope of the litigation and the nature of the questions and rights which may be litigated. We see no reason for holding that a replevin suit brought by an assignee is subject to any different rules from a suit brought by any other litigant. The law entitles a defendant in replevin to litigate not merely the right of possession, but the right of property, and the assignee having adopted that form of action, must be held to have adopted it with all its incidents.

Wilson, having pleaded property in himself, was entitled to introduce any competent evidence tending to support that plea. He attempted to sustain his title by showing that the goods had been obtained from him by the plaintiff's assignors by fraud, thus entitling him to disaffirm and repudiate the sale, and recover back the property sold. The evidence offered was plainly material to the issue, and the issue was one which the court had the power, and which it was its duty to try. The exclusion of the evidence, therefore, was manifest error.

The defendants offered in evidence the transcript of an order of the county court, made during the pendency of the present suit, with the assent of a majority of the creditors of Graff, Abrahamson & Co., discontinuing all the proceedings in that court and remitting all the parties to the same rights and duties existing at the date of the assignment, except so far as the estate had been administered, and providing for the discharge of the assignee, after he should have accounted for the assets received by him under the assignment. This evidence was excluded by the court, and its exclusion is assigned for error. We have to suggest to counsel whether evidence

tending to show the termination of the plaintiff's rights to the property replevied during the pendency of the replevin suit, can be availed of by the defendants in the absence of a plea *puis darrien continuance*. But in the light of the views above expressed, it would seem that said evidence was scarcely material. The effect of the order discharging the assignee would be, not to re-invest Wilson, but Graff, Abrahamson & Co., with the title to the goods. Wilson's title would be in no way strengthened nor his position improved. The assignee, being a mere volunteer, stands in the shoes of his assignors, and if Wilson can not establish his title as against one, he can not as against the other.

For the errors above pointed out, the judgment will be reversed and the cause remanded.

Reversed and remanded.